O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AMUSEMENT ART, LLC, | ) | Case No. 2-14-cv-08290-DDP-JPR |
| | ) | |
| Plaintiff, | ) | **ORDER RE MOTION FOR** |
| | ) | **ATTORNEYS' FEES AND NON-** |
| v. | ) | **TAXABLE COSTS** |
| | ) | |
| LIFE IS BEAUTIFUL, LLC, et al., | ) | [Dkt. 180] |
| | ) | |
| Defendants. | ) | |

Presently before the court is Defendants Life is Beautiful LLC ("LIB") and Downtown Las Vegas Management LLC's (collectively "Defendants") Motion for Attorneys' Fees and Non-Taxable Costs. After reviewing the parties' submissions and hearing oral argument, the court adopts the following Order.

**I. BACKGROUND**

The court assumes the parties' familiarity with the factual background of this case, which has been set forth in greater detail in the court's summary judgment Order. (*See* Dkt. 171.) In brief, this case arises out of an intellectual property dispute between Plaintiff Amusement Art and Defendants. Defendant LIB hosts the Life is Beautiful festival in Las

Vegas, Nevada—an annual event that features music, art, food, and other programming. When the Life is Beautiful festival was first launched in 2013, one of the logos associated with the event was an image of a heart made of splattered paint. Plaintiff Amusement Art is a company owned by artist Thierry Guetta and his wife Debora Guetta. Amusement Art holds and licenses intellectual property produced by Thierry Guetta. Guetta's first solo art exhibition, held in 2008, was entitled "Life is Beautiful" and Guetta has incorporated that phrase into some of his artwork. Guetta has also previously produced artwork depicting a heart accented by splattered paint design.

In mid-2013, a common acquaintance introduced LIB to Guetta's business associates and encouraged the two parties to consider possible collaboration. The parties and their business associates engaged in several discussions, including some pertaining to potential intellectual property licensing arrangements with Amusement Art. However, the parties were unable to reach any agreement and Amusement Art ultimately filed the instant suit, asserting claims for trademark infringement, copyright infringement, and various other state and common law claims. (*See generally* FAC.)

At issue in this case are Amusement Art's asserted rights to the splashed paint heart design (the "heart design") and the phrase "Life is Beautiful." Guetta had registered a copyright for the heart design in 2009 and asserted that Defendants had violated his copyright and trademark rights in the design. (See FAC ¶¶ 20-22.) Between 2011 and 2012, Plaintiffs also filed eight "intent to use" trademark applications with the Patent and Trademark Office (PTO) for the phrase "Life is Beautiful." (Declaration of Samuel T. Boyd in Support of Motion for Summary Judgment., Exs. 13, 15, 17, 19, 21, 23, 25, & 26.) These applications included Statements of Use, made under penalty of perjury, asserting that AA had actually used the phrase "Life is Beautiful" as a trademark to sell approximately 257 categories of goods within the application classes. (*Id.*, Exs. 14, 16, 18, 20, 22, 24, 27, and 28.) Along with the statements of use, Plaintiff also submitted pictures of various goods with "Life is Beautiful" tags attached to them. In September of 2014, one month before filing this suit, Plaintiff also filed a trademark registration application for

2

the phrase "Life is Beautiful" in the classification for festival and community events. (*Id.*, Ex. 60.)

After this suit commenced, Defendants determined that a number of the statements of use submitted by Plaintiff were false and that Plaintiff did not actually sell many of the goods for which it obtained trademark registrations. (*Id.*, Ex. 5 (Patrick Guetta Dep.) at 114:14-118:14, 153:1-154:20; *Id.*, Ex. 10 (Debora Guetta Dep.) at 75:21-77:10, 77:17-80:15.) Defendants notified Plaintiff that they intended to seek cancellation of the trademarks on the basis of fraud on the trademark office. (*Id.*, Ex. 39.) Plaintiff then voluntarily surrendered eight of the trademark registrations but retained the 2014 registration in connection with festivals and art events. (*Id.*, Ex. 33)

On July 5, 2016, Defendants filed Motions for Summary Judgment as to all of Plaintiff's claims and Defendants' counterclaims for cancellation, which the court granted in full. (*See* Dkt. 171.) As to Plaintiff's trademark claims regarding the phrase "Life is Beautiful," the court found that the doctrine of unclean hands barred Plaintiff's suit because Plaintiff secured eight of the nine relevant trademark registrations by making fraudulent statements before the PTO. As to the heart design, the court found that Defendants were entitled to summary judgment on the trademark claim because Plaintiff's own 30(b)(6) representative acknowledged that the design did not function as Plaintiff's trademark and also because the evidence failed to create a triable issue of fact was to the validity and protectability of the mark. Finally, the court granted summary judgment to Defendants on the heart design copyright claim on the ground that no rational jury could find the two images were "virtually identical," as is required when asserting a copyright claim based on a ubiquitous image such as a heart design.

Defendants now move for attorneys' fees and non-taxable costs in the amount of $1,968,100.34.

**II. LEGAL STANDARD**

The Lanham Act permits courts to award reasonable attorneys' fees in trademark cases only in "exceptional cases." 15 U.S.C. § 1117(a). Historically, a case was considered

3

exceptional only when a plaintiff had shown that a defendant engaged in "malicious, fraudulent, deliberate or willful" infringement. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993). In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), however, the Supreme Court held that an analogous standard under the Patent Act was "unduly rigid and impermissibly encumber[ed] the statutory grant of discretion to district courts." *Id.* at 1755. Instead, the Court explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 1756. Since *Octane Fitness*, the Ninth Circuit has clarified that "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (quoting *Octane Fitness*, 134 S. Ct. at 1756). Under the "totality of the circumstances" approach, district courts may consider a "'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness*, 134 S. Ct. at 1756 n.6 (quoting *Fogerty v. Fantasy Inc.* 510 U.S. 517, 534 n.19 (1994)). The burden of proof for establishing an entitlement to fees is preponderance of the evidence.

Section 505 of the Copyright Act allows district courts judicial discretion to award attorneys' fees to the prevailing party in a copyright action. 17 U.S.C § 505. In exercising this discretion, the Ninth Circuit has directed courts to consider non-exclusive factors similar to ones that now govern fee awards under the Lanham Act: "'the degree of success obtained; frivolousness; motivation; objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) (quoting *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994).

4

## III. DISCUSSION

### A. Entitlement to Attorneys' Fees

The threshold question raised by Defendants' motion is whether Defendants should be awarded any fees at all under the Lanham Act or the Copyright Act. As noted above, Plaintiff's Lanham Act claims pertain to the alleged infringement of the "Life is Beautiful" mark and the heart design mark and Plaintiff's copyright claim pertains only to the heart design.

#### 1. Lanham Act claims

Defendant argues that the weakness of Plaintiff's claims, the substantive unreasonableness of Plaintiff's position, Plaintiff's litigation strategy, and the need to deter similar actions all counsel in favor of awarding fees incurred in connection with defending the infringement allegations pertaining to both the "Life is Beautiful" mark and the "splashed heart" mark. As to the "Life is Beautiful" claim in particular, Defendants also urge the court to award fees on the ground that Plaintiff's action was premised on fraudulent misstatements.

Under both the historical test for "exceptional cases," *see Lindy Pen*, 982 F.2d at 1409, and the more relaxed standards of *Octane Fitness*, *see* 134 S. Ct. at 1756, a party's motivation or "fraudulent" conduct is archetypal conduct that warrants fee-shifting under the Lanham Act. *See* S. Rep. No. 1400 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 7132, 7136 ("It would be unconscionable not to provide a complete remedy including attorney's fees for acts which the courts have characterized as . . . fraudulent."). Accordingly, courts have routinely found that cases where a Plaintiff engaged in fraud on the trademark office are "exceptional" under the Lanham Act. *See, e.g., On Site Energy Co. v. MTU Onsite Energy Corp.*, No. 10-cv-1671 JS (WDW), 2013 WL 3990919, at *10 (E.D.N.Y. Aug. 2, 2013) (holding that where a "jury definitively held that Plaintiff had obtained registration . . . by fraud . . . [t]his, alone, merit[ed] a finding that this is an exceptional case entitling Defendant to attorneys' fees"); *Firehouse Rest. Grp., Inc. v. Scurmont LLC*, No. 4:09-cv-00618-RBH, 2011 WL 4943889, at *11 (D.S.C. Oct. 17, 2011)

("the jury's verdict, finding that [plaintiff] committed fraud on the USPTO, renders this case 'exceptional'"). Defendants ask the court to make a similar finding here.

In light of the extent of Plaintiff's fraudulent conduct in this case, the court finds that Defendants are entitled to recover attorneys' fees incurred in connection with defending the trademark infringement claims arising from the "Life is Beautiful" mark. As Defendants note, these particular infringement claims were initially based on eight fraudulently-obtained registrations where Defendants claimed the use of the "Life is Beautiful" mark in connection with 257 categories of goods. (Mot. 10.) Plaintiff obtained these registrations by staging photographs and submitting false declarations about using the mark in commerce on goods that they later admitted were never sold. (*Id.*) Plaintiff responds that court's prior determination that Plaintiff had engaged in fraudulent conduct should not automatically entitle Defendants to attorneys' fees. Specifically, Plaintiff notes that they surrendered the eight fraudulently-obtained registrations and that the infringement claims was ultimately premised on a ninth registration that was not fraudulently-obtained. (Opp'n 10-11.) This effort to minimize the relevance of the fraud does not alter the exceptional nature of this case. As the court explained in its summary judgment Order, Plaintiff attempted to fraudulently "secure a monopoly over most plausible uses of the phrase 'Life is Beautiful' without actually investing any resources into developing the goodwill of their brand." Plaintiff then subjected others to the burden of litigation on the basis of all of those marks. Just as Plaintiff's eventual abandonment of the fraudulently obtained marks was insufficient to overcome Defendants' charge of unclean hands, it is also inadequate to show that this case does not stand out from others for determining whether a fee award is merited.

Although Plaintiff's fraud qualifies this case as an exceptional under the Lanham Act, it is worth noting that the fraud only pertained to trademark claims arising from the "Life is Beautiful" mark and not the heart design mark. Nonetheless, Defendants contend that the weakness of the heart design infringement claim also justifies a fee award. (Mot. 12.) Specifically, Defendants note that Plaintiff persisted in litigating this claim despite an

6

acknowledgement by Plaintiff's 30(b)(6) witness that she considered the heart design a copyright image rather than a trademark image. (Dkt. 171 at 19.) Moreover, Defendants note the lack of evidence substantiating Plaintiff's claim that the limited use of the design in Guetta's artwork rose to the level of a protectable trademark. Plaintiff offers no response to Defendants' contention that it is entitled to a fee award for defending the Lanham Act claims pertaining to the heart design. (*See* Opp'n 9-12.)

Based on the court's review of the litigation of this claim, the court finds that attorneys' fees would be justified under the Lanham Act for this claim as well. Specifically, the court notes that Defendants attained complete success on their Lanham Act claim and that the heart design trademark claim, in particular, was exceptionally weak. First, this case stands apart from others because of the acknowledgment by Plaintiff's own 30(b)(6) that rights to the design in question sounded in copyright rather than trademark. Moreover, even if the court were to credit Plaintiff's efforts to explain away the corporate representative's statement, Plaintiff has no provided no evidence of actual use of the mark as a trademark and no evidence that the mark would be recognized by a consumer as a source identifier. Of course, not every case where a party loses at summary judgment qualifies as exceptional. But this case is not one where there was inadequate evidence to create a triable issue but rather almost no evidence.

Given the fraudulent conduct concerning the "Life is Beautiful" trademark claims and the exceptional weakness of the splashed heart design trademark claims, the court finds that this case is an exceptional case under the Lanham Act that merits an award of attorneys' fees to the prevailing party.

2. Copyright claims

Defendants also contend that they are entitled to attorneys' fees with respect to Plaintiff's copyright claim for the heart design. As with the trademark claim pertaining to this design, Defendants contend that the copyright claim was objectively unreasonable. As to this particular claim, Defendants note the absence of any evidence of direct copying and the fact that the visual differences between the images precluded a finding that the

two designs were virtually identical, as was required to show a copyright violation in this case. (Mot. 16.) Plaintiff responds that the copyright claim was not frivolous because it is undisputed that it owns a valid copyright to the heart design and because Plaintiff presented evidence demonstrating a "reasonably possibility" that Defendants' had access to the image. (Opp'n 14.)

Although the court ultimately concluded that Plaintiff's copyright claim should not proceed to trial, the court does not find that that claim was so frivolous or objectively unreasonable so as to justify an award of attorneys' fees. First, as Plaintiff notes, Amusement Art owns a valid copyright to the design in question and the evidence suggests this action was brought in good faith to protect that copyright. Moreover, although the court concluded that a copyright claim pertaining to a ubiquitous image such as this heart design must be evaluated under the virtually identical standard, it was not unreasonable for Plaintiff to urge a less stringent standard. Nor was the action frivolous as there were similarities between the images, even if not enough to create a triable issue of fact as to virtual identicalness. Finally, the court does not find that any deterrence interests are served by awarding fees in this case. Owners of valid copyrights are entitled to bring enforcement actions against images that bear visual similarity to their copyrighted design. Not all of these cases will proceed to trial but this particular case is not the sort of action that warrants an award of fees on deterrence grounds. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C-12-4601 EMC, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014) ("It is not the purpose of the Copyright Act 'to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful.'" (quoting *Thompkins v. Lil' Joe Records, Inc.*, No. 02–61161–CIV, 2008 WL 896898, at *6 (S.D. Fla. Mar. 31, 2008))).

**B.   Reasonable Attorneys' Fees Calculation**

Having concluded that Defendants' are entitled to a portion of their attorneys' fees under the Lanham Act, the court proceeds to calculate the fee award. Although the amount of the fee award is subject to the court's discretion, *see Twin City Sportservice, Inc.*

*v. Charles O. Finley & Co.*, 676 F.2d 1291, 1312–13 (9th Cir. 1982), the Ninth Circuit has set forth the procedure a district court should follow when calculating a fee award under the Lanham Act:

> When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. Next, in appropriate cases, the district court may adjust the "presumptively reasonable" lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation.

*Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The considerations that may counsel in favor of adjusting the lodestar rate include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). However, the lodestar figure is considered presumptively reasonable, and adjustments of the lodestar are "proper only in 'rare' and 'exceptional' cases, supported by specific evidence on the record and detailed findings by the district court." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987).

1. Reasonable rates

The reasonable hourly rate corresponds to the prevailing market rate in the relevant community, considering the experience, skill, and reputation of the attorney in question. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1985). "'Unless counsel is working outside his or her normal area of practice,' evidence that a billing rate was the usual rate the attorney charges for his or her services is evidence that the rate is comparable to the market rate." *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-07098-AB (SHx), 2015 WL 1746484, at *5 (C.D. Cal. Mar. 24, 2015) (quoting *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982)); *accord Kourtis v. Cameron*, 358 Fed. App'x. 863, 868 (9th Cir. 2009) ("The district court's calculation of an attorney's fee award . . . based on the actual rates charged by [prevailing party's] attorneys was reasonable under 17 U.S.C.

§ 505."). On a motion for attorneys' fees, the party seeking fees bears the burden of demonstrating that the rates requested are "in line with those prevailing in the community for similar services." *Intel Corp.*, 6 F.3d at 622 (quoting *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)).

In the instant case, Defendants' counsel charged hourly billing rates between $450 and $865. (Declaration of Samuel Boyd, Ex. G.) Defendants also staffed the case with paralegals and support staff charging hourly rates between $215 and $380. (*Id.*) Defendants contend that these rates were consistent with the prevailing market rates. In support, Defendants submit the declaration of their expert Richard Pearl, who has been retained to opine on the reasonableness of billing rates. (Declaration of Richard M. Pearl ¶ 2.) Mr. Pearl catalogued a number of recent fee award decisions in this district, as well as the prevailing market rates for comparable counsel detailed in various industry reports. (*Id.* ¶¶ 13-16.) Plaintiff contests the requested hourly rate, arguing that the Pearl Declaration improperly focuses on the rates charged by "large and prestigious private law firms" instead of what a reasonably competent counsel would charge. Plaintiff also argues that this case, which concerned a single phrase and a single image, should not be considered novel or difficult.

The court finds that the hourly rates requested by Defendant are reasonable. First, contrary to Plaintiff's assertion, this case raised at least some complex issues that benefitted from the work of experienced counsel. The case was litigated for more than two years, involved considerable discovery, raised questions regarding equitable defenses, and involved multiple interrelated parties. Furthermore, Plaintiff's emphasis on what a reasonably competent counsel might charge is misplaced given that the court must account for what the prevailing market rate is in the relevant community, considering the experience, skill, and reputation of the attorney in question. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010). Under that standard, the Pearl Declaration adequately substantiates Defendants' claim that the hourly rates charged by their counsel are in line with the prevailing rates. Furthermore, both the attorney rates

and the paralegal rates are in line with hourly rates approved in recent comparable intellectual property cases in this district. *See, e.g.*, *Perfect 10*, 2015 WL 1746484, at *29, Appendix A (approving hourly rates for partners between $705 and $930, hourly rates for associates between $360 and $690, and hourly rates for paralegal and support staff between $245 and $345). Accordingly, the court finds that hourly rates requested by Defendants are reasonable.

### 2. Reasonableness of time spent

In motions for attorneys' fees, the fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Hensley v. Eckerhart*, 461 U.S. 433, 437. A fellow district court has succinctly summarized the legal standards that govern the calculation of reasonable attorneys' fees:

> "[T]o determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, the district court should begin with the billing records the prevailing party has submitted." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir.2013). However, "a district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.2000). Normally, courts will conduct an "hour-by-hour analysis of the fee request, and exclude those hours for which it would be unreasonable to compensate the prevailing party." *Gonzalez*, 729 F.3d at 1202. However, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (internal quotes omitted). A court that exercises its discretion to reduce the lodestar amount by an across-the-board percentage reduction typically must explain its reasons for doing so. *Gonzalez*, 729 F.3d at 1202. "Nevertheless, the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." M*oreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

In total, Defendants seek to recover $1,701,584 in attorneys' fees for the 3,127.20 hours their attorneys spent working on this case. This sum is the equivalent of more than a year and a half of full-time billable work by a single attorney. Although there were features of this case that ultimately justified a fee award under the Lanham Act, it was not so complex a lawsuit as to justify this considerable sum. At bottom, this case involved Defendants' counsel preparing to take or defend approximately fourteen depositions and

11

brief six motions. (*See generally*, Boyd Decl., Ex. H.) While the court recognizes that a numerical tally of the number of depositions or motions a case involves does not necessarily capture the complexity of lawsuit, it provides at least a starting point for contextualizing the effort involved in litigating an action. A closer review of defense counsel's billing record reveals that some of counsels' claimed hours were not reasonably expended and that reductions in the fee award are justified. [1]

The court will begin its analysis of the reasonableness of the fees requested with Plaintiff's specific objections to particular billing entries. (*See* Opp'n 3-6.) First, Plaintiff objects to the 38.20 hours billed by three attorneys for preparing for a thirty-minute meet-and-confer discovery call. (Opp'n 3 (citing Boyd Decl., Ex. H at 139-40.) Defendants argue that this objection is misleading and exaggerates the amount of time actually billed for that particular task. In what is a recurring response, Defendants note that the entries Plaintiff focuses on actually list multiple tasks, only one of which is preparation for the discovery call. If the court were to account for the other tasks detailed in those entries, Defendants contend that the amount of time spent on the task at issue would be reasonable. While the block billing of these records makes it difficult to isolate the specific amount of time spent on preparing for the discovery call as opposed to other tasks, the court will use its judgment to ascertain the amount of time spent on the task at hand. Based on that review, the court finds that, even accounting for the other tasks performed during that period, a reduction of 20 hours is justified in connection with

---

[1] At oral argument, Defendants' counsel defended the reasonableness of the fees requested by referring the court to the fee award in *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *1 (C.D. Cal. Mar. 24, 2015), which approved $5,213,117.06 in a case involving copyright, trademark, and state law claims. Aside from some overlap in the claims at issue and the fact that both cases were resolved at summary judgment, the two cases are not comparable. In justifying the fee award, the district court in *Perfect 10* noted that the case had been litigated for nearly four years at the time the fee motion was decided (two and a half years here), involved thirty noticed motions (six here), and consisted of nearly 700 docket entries (216 here). By any of those measures, this case is considerably less complex.

these entries. Given that the average billing rate for the relevant timekeepers involved was $548.50, the court will reduce the fee award by $10,970.

Plaintiff then objects to counsel billing 46.20 hours for three attorneys and one paralegal to prepare for and defend the deposition of Defendants' expert Elizabeth Dean, even though only one attorney attended the four-hour deposition. (Opp'n 3-4 (citing Boyd Decl., Ex. H 196-97).) Defendants do not specifically respond to this objection. However, the court notes that these entries also include other tasks. Nonetheless, the court credits Plaintiff's contention in part and finds that reduction of 26.20 hours is warranted. Given that the average hourly rate for the attorneys involved was $695, the court will reduce the fee award by $18,209.

Next, Plaintiff objects to Defendants' counsel billing 106 hours for "research[ing] and draft[ing] memo assessing plaintiff's claims in preparation for mediation." (Opp'n 3-4 (citing Boyd Decl., Ex. H 92-159.) Defendants do not respond to this specific objection but here, too, at least some of the entries detail other work. Nonetheless, the majority of the entries regarding this task pertain only to preparing the mediation memo. The court finds that this is excessive and will allow only thirty hours for preparation of a mediation memo. The average hourly rate for the attorneys working on this task was $640 and, with the 76 hour reduction, the court will reduce the fee award by $48,640.

Plaintiff also contends that 49.30 hours billed by counsel for preparing a never-filed motion to compel was unnecessary. (Opp'n 4 (citing Boyd Decl., Ex. H 137-139.) Defendants do not contest this claim. Although several of the relevant entries detail other tasks, the court will disallow 29.30 hours. Given that the average hourly rate for the attorneys involved was $555, the court will reduce the fee award by $16,261.50.

Furthermore, Plaintiff opposes 18.5 hours billed in connection with preparing a meet and confer letter and 30 hours billed in connection was drafting an expert report. After taking into account the multiple tasks detailed in the relevant entries, the court finds that Defendants' counsel reasonably expended the remainder of the time on these tasks. Accordingly, the court will not reduce the fee award for these tasks. Finally,

Plaintiff objects to the thirty hours claimed in connection with addressing Plaintiff's Motion to add Live Nation and Ticketmaster as parties. Plaintiff states that those companies were voluntarily dismissed on the understanding that "each party would bear its costs," so Defendants cannot now claim the fees it incurred as a result of the potential inclusion of those parties. Defendants respond that Ticketmaster and Live Nation were both represented by other counsel and that an agreement between Plaintiff on one hand and Ticketmaster, and Live Nation on the other to bear their own costs does not preclude Defendants from recovering *their* fees. Defendants are correct that they did not sign the stipulated dismissal and are not one of the parties required to bear their own costs. Defendants also explain that they reasonably undertook efforts to oppose the inclusion of Ticketmaster and Live Nation in the action because adding those parties might have exposed to Defendants to the additional liability of indemnifying any judgment against those parties. Thus, the court will not disallow the hours billed related to this particular issue.

Although Plaintiffs have only specifically objected to the billing entries noted above, the court has undertaken a review of counsel's records and finds that additional adjustments are warranted. First, the billing entries reflect 140 hours were expended on preparing one of the summary judgment motions filed in this action. (Boyd Decl., Ex. H 165-77 (listing time spent preparing LIB's motion for summary judgment but not account for time spent by the partner revising the brief and the paralegal proofing the brief).) Of those 140 hours, nearly 50 were billed by one attorney responsible for preparing a single argument in the brief. (*See id.* (listing entries by Elissa Knoff totaling 49.5 hours for researching and drafting "unclean hands section of summary judgment brief).) While this argument ultimately proved to be an important one, it is only one of five arguments presented by Defendants and comprised four pages of an oversized summary judgment brief. Accordingly, the court finds that only 20 hours were reasonably expended on preparing this argument. Further, the court would allow only allow 80 hours in total for preparing the summary judgment brief. Given that the average hourly rate of the two

14

attorneys who drafted the summary judgment brief was $500, the court reduces the award by $30,000.

Next, Defendants' motion indicates a number of instances where depositions were staffed with two attorneys. Given the extensive hours billed by attorneys' preparing for depositions and conferencing with each other regarding deposition preparation, the court finds it was unnecessary to have two attorneys attend depositions. In particular, it appears that on at least six occasions, Mr. Boyd attended and assisted Ms. Godley in taking depositions. (Boyd Decl., Ex. H., 46 (Cohen Depo.), 52 (Thierry Guetta Depo.), 58 (Patrick Guetta Depo.), 65 (Debora Guetta Depo.), 106 (Joseph Depo.), 107 (Dean Depo.). In total, this amounts to 46 hours of excess attorney work, which the court will not allow. At Mr. Boyd's billing rate of $530, this amounts to $24,380 reduction. Furthermore, on at least one occasion, Ms. Godley attended and assisted Mr. Boyd at a deposition for five hours. (*Id.* at 107 (Sebold Depo.) At Ms. Godley's billing rate of $865, this amounts to a $4,325 reduction.

In their reply brief, Defendants seek an additional $52,611 for 97 hours of work performed in January 2017 largely related to drafting the attorneys' fees motion and beginning to prepare the reply brief. The court finds that this is excessive and would only allow 40 hours for the preparation of that motion. The average hourly rate of the attorneys that performed work in January was $542.38. Accounting for the 57 hour reduction, Defendants reasonably incurred an additional $21,695.20 in attorneys' fees in January 2017. At oral argument, Defendants' counsel also presented bills for fees incurred in connection with drafting the attorneys' fees reply brief and preparing for the hearing on the instant motion. The total sum for this work, performed between February and April 2017, was $79,663.50. (*See* Supplemental Decl. Samuel T. Boyd ¶ 2.) Included in the supporting bills are entries totaling 73.1 hours for the work of three attorneys and one paralegal preparing and revising the sixteen-page reply brief. (*See* Boyd Supp. Decl, Ex. T at 1-5.) In the court's review, the court would allow 25 hours for drafting the brief and 5 hours for revising the brief. The average hourly rate of the attorneys involved was $733,

thus, for the 30 hours reasonably expended, the court will award $22,000. The remainder of the bill reflects 9.3 hours spent by one attorney preparing a demonstrative for the hearing on the attorneys' fees motion. At oral argument, Plaintiff's counsel challenged this bill as Defendants had not presented any demonstrative and Defendant's counsel acknowledged there were no demonstrative. Accordingly, the court finds that these hours were not reasonably spent. Finally, the bills reflect 55.5 hours billed by three attorneys for preparing for the hearing of this motion. The court finds this request excessive and would allow only 10 hours for preparing for and attending the brief hearing. Again, the average hourly rates for the attorneys involved were $733. Thus, the court will allow an additional $7,330 for hearing preparation.

Taken together, the total deductions made by the court require subtracting $152,785.50 and the additional fees from January through the present require adding $51,025.20. Finally, in light of the court's review of the entire billing record, the court will award an additional across the board reduction of 10 percent to account for other excessive entries. This reduction is made in particular to account for the overall excess hours spent by counsel preparing for the various depositions, including ones that it appears from the billing record were never actually taken.

Defendants seek to recover $1,701,584.50 in attorneys' fees. After making the explicitly stated deductions and adding the amount allowed for January, the attorneys' fees are reduced to $1,599,824.20. After making the additional ten-percent reduction, the total recoverable fees amount to $1,439,841.78.

3.   Non-taxable costs and Expert fees

In addition to attorneys' fees, Defendants also seek to recover certain non-taxable costs and experts' fees. Specifically, Defendants seek to recover $19,032.47 in non-taxable costs incurred by their counsel, $78,308.17 paid Defendants' electronic discovery vendor, $166,935.20 billed by Defendants' damages expert, and $2,240 billed by Defendants' attorneys' fees expert. Of these requests, Plaintiff only specifically objects to Defendants' expert fee as excessive. (*See* Opp'n 6-8.)

16

As a general matter, the Ninth Circuit has held that where a statute "provides for 'reasonable attorney's fees . . . district courts have discretion to award non-taxable costs to prevailing parties . . . .'" *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) (reversing district court's denial of non-taxable costs under the Fair Credit Reporting Act). In reaching this conclusion, the Ninth Circuit explained that "'the courts have long held [that certain non-taxable costs] can be awarded as part of a reasonable attorneys' fee since they are typically charged to paying clients by private attorneys.'" *Id.* (quoting *Davis v. City of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345). Applying this rationale, the court has approved awards of non-taxable costs such as travel, courier and copying costs, *see Davis*, 1976 F.2d at 1556, travel expenses, *see Davis v. Mason County*, 927 F.2d 1473 (9th Cir. 1991), and computerized research costs, *see Trustees of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1256 (9th Cir. 2006). Applying this standard, ordinary non-taxable costs such as the ones incurred by Defendants' counsel and electronic discovery vendor are recoverable under the Lanham Act's fee-shifting provision. Having reviewed these billing records, the court finds these expenses were adequately documented and reasonable.

The availability of certain non-taxable costs does not mean that all expenditures are recoverable.[2] Specifically, in *West Virginia Univ. Hosps. v. Casey*, 499 U.S. 83, 86 (1991) *abrogated in part on other grounds by* Pub. L. No. 102–166, Title 1, § 113(b), 105 Stat. 1075, 1079 (1991), the Supreme Court held that a party cannot recover expert witness fees as part of its attorneys' fees absent explicit statutory or contractual language to the contrary. Given that the Lanham Act does not expressly provide that expert witness fees are recoverable as part of attorneys' fees, district courts in this circuit have declined to award expert expenses as a non-taxable cost. *See Safeworks, LLC v. Teupen Am., LLC*, No. C08-

---

[2] Although neither party addresses the availability of expert fees in their briefing, the court raises the issue so as to not issue an order that exceeds its statutory authority.

12197, 2010 WL 3033711, at *7 (W.D. Wash. July 29, 2010) (denying request for expert fees under the Lanham Act); *B & H Mfg. Co. v. Lyn E. Bright*, No. CVF01-6619 AWI LJO, 2006 WL 547975, at *17 (E.D. Cal. Mar. 3, 2006) (same); *cf. Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, No. CV 07-8298 ABC (RZX), 2010 WL 11404472, at *4 (C.D. Cal. June 17, 2010), *aff'd*, 526 F. App'x 761 (9th Cir. 2013) (finding that expert fees were available under the Copyright Act because the statute expressly provided for recovery of "full costs" (citing *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005))). This Court agrees with its fellow district courts and finds that Defendants cannot recover the fees charged by either their damages expert Elizabeth Dean or the attorneys' fees expert Richard Pearl under the Lanham Act.

After including the allowable non-taxable costs, the total amount Defendants can recover in this action is $1,537,182.42.

### 4. Apportionment

"[A]s a general matter, a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for time spent litigating the Lanham Act claims." *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000). However, the Supreme Court has recognized that in some cases the "claims for relief will involve a common core of facts or will be based on related legal theories" such that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. In these cases, the Court can evaluate "the significance of the overall relief obtained . . . in relation to the hours reasonably expended on the litigation." *Id.* In the Lanham Act context, even if "an exact apportionment" is impossible, courts must "make some attempt to adjust the fee award in an effort to reflect an apportionment, . . . unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." *Gracie*, 217 F.3d at 1069–70. One method for apportionment is reducing a total attorney fee amount by a percentage that represents work on non-recoverable non-Lanham Act claims. *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157-58 (9th Cir. 2002).

Plaintiff argues that apportionment is possible while Defendants urge the court to conclude that this is a case where the claims are so intertwined that apportionment is impossible. Although much of the work performed by Defendants' counsel pertained to all of the claims at issue and was not subdivided by particular claim, the court does not find this to be a case where apportionment would be meaningless. As a first cut, the court notes that Plaintiff's Complaint asserts six causes of action, only two of which arise under the Lanham Act. Moreover, two of the claims arise under state common law or statutory law where attorneys' fees are not available. A simple one-third apportionment, however, fails to capture the relative significance of the various claims at issue in this case. Neither party addressed the state law claims for unfair competition and common law trademark infringement other than as derivative of the Lanham Act claims. Moreover, courts have found that where "the common law trademark infringement claim stood or fell with the Lanham Act claim" the claims could not be distinguished for fee purposes. *See Albrecht v. Tkachenko*, No. 14-CV-05442-VC, 2015 WL 2227607, at *1 (N.D. Cal. May 11, 2015); *Am. Optometric Soc., Inc. v. Am. Bd. of Optometry, Inc.*, No. CV10-03983 AHM FFMX, 2012 WL 6012861, at *6 (C.D. Cal. Dec. 3, 2012) (awarding full fee award where state law false advertising claims were congruent with Lanham Act claims).

As the court has stated above, a more accurate view of the case is that it primarily concerned three claims: a Lanham Act claim pertaining to the "Life is Beautiful" mark, a Lanham Act claim pertaining to the heart design; and a copyright claim pertaining to the heart design. Viewed through this lens, a more accurate assessment of the Lanham Act's relative significance to the overall case is that it comprised approximately two-thirds of the issues addressed in this litigation. This, however, continues to overstate the Lanham Act's significance as there were a few other issues addressed by this litigation. First, the state law claims were also derivative of the copyright claims in this case. Second, there was a question of Defendant Downtown Las Vegas Management's liability for LIB's acts under Nevada law that did not pertain to any particular claim. (*See* Dkt. 95 at 2-5.). Third, at least part of the work performed in connection with the attorneys' fees motion sought

to recover fees for a copyright claim for which the court has concluded that Defendants are not entitled to a fee award. In light of these considerations, the court finds that a small reduction from the two-thirds apportionment is warranted and finds that the work pertaining to the Lanham Act claim made up 60% of the total reasonable attorneys' fees incurred in this action. Applying the 60% adjustment to the $1,537,182.42 calculated above, the court finds that Defendants are entitled to recover $922,309.45 in attorneys' fees for work performed in connection with their Lanham Act claims.

**IV. CONCLUSION**

For the reasons stated above, the court GRANTS in part Defendants' Motion for Attorney's Fees and Non-Taxable Costs in the amount $922,309.45.

**IT IS SO ORDERED.**

Dated: May 23, 2017

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE